**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JEFFREY TIMOTHY LANDRIGAN,
*Plaintiff-Appellee,*

v.

JANICE K. BREWER; et al.,
*Defendants-Appellants.*

No. 10-99021

D.C. No.
2:10-cv-00246-ROS
District of Arizona,
Phoenix

ORDER

Filed October 26 2010

Before: Pamela Ann Rymer, Kim McLane Wardlaw, and
William A. Fletcher, Circuit Judges.

---

## ORDER

The State of Arizona appeals the district court's order granting a temporary restraining order enjoining the scheduled execution on October 26, 2010 of Arizona inmate Jeffrey Timothy Landrigan.[1] We cannot say the district court abused its discretion, and we affirm.

Landrigan filed a complaint under 42 U.S.C. § 1983 on October 21, 2010, challenging the use of sodium thiopental from an unidentified foreign manufacturing source that is not approved by the Food and Drug Administration (FDA). He maintains that this creates a substantial and unnecessary risk of serious pain during his execution in violation of the Eighth Amendment to the United States Constitution. Landrigan also

---

[1]The district court's mandate states that "Plaintiff 's Motion for a Temporary Restraining Order or a Preliminary Injunction is GRANTED." We construe its order as one for a preliminary injunction.

claims that the state's refusal to disclose details about the source of the drug and its handling offends his due process rights under the Fourteenth Amendment. Although the state acknowledged that its source of sodium thiopental is foreign, it refused to supply details. The state's position is that Ariz. Rev. Stat. § 13-757(C) prohibits disclosure of the identity of people or entities who are involved in ancillary functions of an execution and information in records that would identify them, and that in any event its protocol — which is not challenged in this action — has safeguards sufficient to guard against an intolerable risk of harm.

Landrigan sought post-conviction relief in state court challenging Arizona's lethal injection protocol on state law grounds. Relief was denied on October 8, 2009, largely on the basis of Judge Wake's ruling in *Dickens v. Brewer*, No. CV-07-1770-PHX-NVW, 2009 WL 1904294 (D. Ariz. July 1, 2009), upholding the constitutionality of the protocol.[2] When the state moved in the Arizona Supreme Court for a warrant of execution, Landrigan opposed the motion in May 2010 on various grounds, including the pendency of appellate proceedings in *Dickens*. He supplemented his opposition by asserting that there was a nationwide shortage of sodium thiopental and asking the court to delay ruling on the warrant request until the state demonstrated that it had, or could legally obtain, the drugs necessary to carry out his execution consistent with Arizona's protocol. The Arizona Supreme Court issued a warrant on September 21, but directed the state to report by October 1 whether it possessed a sufficient quantity of all the necessary drugs. The state indicated that Arizona Department of Corrections (ADOC) had obtained the necessary supply. Landrigan then asked the Arizona Supreme Court to compel disclosure of information about the sodium thiopental that the state planned to use to implement his execution, as well as to stay the execution. On October 20, the Arizona Supreme Court declined relief without explanation.

---

[2]An appeal from this ruling is pending in our court.

Landrigan filed his federal complaint the next day. The day the complaint was filed, the district court issued an order requesting the state voluntarily to provide detailed information concerning the sodium thiopental it intends to use in Landrigan's execution. In default of providing the information, the court directed the state to explain why it would not provide the information or to explain why the information was not relevant to the disposition of a motion for a temporary restraining order or preliminary injunction. The state did not produce the requested information. The court issued another order on October 23. In this order, the district court disagreed with the state's claim that Ariz. Rev. Stat. § 13-757(C) bars it from providing information about the source, labels, and lot numbers of the Department of Corrections's sodium thiopental supply; in the court's view, the statute applies only to individuals, not to entities. Further, the court noted that while the Eighth Amendment may not categorically prohibit the use of non-FDA approved drugs, to decide the case it must have some basis for comparing the effectiveness of the drug already obtained by the state to that of drugs manufactured by an FDA-approved source. This, the court concluded, it could not do without knowing the source of the drug the state proposed to use, its expiration date, the efficacy of the drug for its intended purpose, and all available documentation concerning the manufacturer and its process for producing sodium thiopental. For this reason, it ordered the state to disclose that information immediately.

In response, the state submitted a "Disclosure of Information/Motion to Reconsider" on October 24. In it, the state represented that its sodium thiopental is in 500 mg vials with an expiration date of May 2014. It also represented that "the process of shipping and receiving the chemicals was cleared and approved by U.S. Customs and FDA officials." Beyond this, the state maintained that the court's October 23 order improperly engrafted a requirement that the state use FDA-approved drugs, and failed to address protections that are in place to ensure that an inmate is unconscious following administration

of sodium thiopental. The state also adhered to its position that Ariz. Rev. Stat. § 13-757(C) preserves confidentiality of entities involved in functions ancillary to the execution process. Alternatively, the state requested permission to file the information required to be disclosed under seal instead of publicly, as the October 23 order directed. It moved to file under seal and for a protective order,[3] which Landrigan opposed.

On October 25, the district court denied the state's request to file under seal and granted a temporary injunction restraining the state from carrying out Landrigan's death sentence until further order of the court.

The court also ordered the state to disclose to Landrigan the documents provided to the court. The court reasoned that in the unique circumstances of this case, the state's refusal to provide discovery, that is, to provide information to Landrigan about the source and efficacy of its drug, effectively deprived him of the opportunity to try to carry his burden of proving entitlement to injunctive relief under *Winter v. Natural Resources Defense Council*, 555 U.S. ___, 129 S. Ct. 365, 376 (2008).[4] This left uncontested Landrigan's evidence that drugs from a non-FDA approved source are more likely to contain harmful contaminants. The court made clear that it does not assume that the Eighth Amendment categorically prohibits use of non-FDA approved drugs; rather, "it seems

---

[3]The request for a protective order was unsupported by a declaration.

[4]The court explained, "This Court has never experienced a situation such as this where a defendant opposes a motion for emergency relief by claiming it has the evidence necessary for resolution of the matter but that evidence should not be produced. Defendants have never adequately explained their rationale for withholding *all* evidence regarding the drug, and Defendants have now created a situation where a seemingly simple claim that could have been resolved well in advance of the execution must be resolved in five days — and now only eighteen hours due to further protractions created only by Defendants — without the benefit of Plaintiff having the opportunity to present fact-based arguments."

likely that the Eighth Amendment *does not* prohibit the use of such drugs." But in the court's view, without assurance of FDA approval, the court lacked the ability to determine whether the drug to be used will perform in the same manner as if it had FDA-approval absent any of the requested information from the state.

The court found little potential for significant injury to the state, as a stay would not preclude it from carrying out the execution with an alternate barbiturate or with sodium thiopental from Hospira when it resumes manufacturing the drug in 2011. By contrast, in the absence of injunctive relief, Landrigan would be executed using a drug of unknown quality. The court concluded that the balance of equities favors Landrigan because a stay could have been avoided had the state timely disclosed the source of its sodium thiopental, and that the temporary stay will allow for responsible adjudication of the claims.

Finally, the court found no significant harm to the public interest from an informed adjudication of Landrigan's claims.

To prevail on a request for injunctive relief, the petitioner must show (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. ___, 129 S. Ct. 365, 376 (2008).

In *Baze v. Rees*, 553 U.S. 35 (2008), the Court considered an Eighth Amendment challenge to Kentucky's lethal injunction protocol. Upholding Kentucky's protocol, the three justice plurality articulated a standard that requires the inmate to establish a "substantial risk of serious harm." *Id.* at 52. The plurality instructed that "[a] stay of execution may not be granted . . . unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of

severe pain." *Id.* at 61. A risk that procedures will not be properly followed can qualify as cruel and unusual punishment, but to establish a violation of the Eighth Amendment, "the conditions presenting the risk must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.' " *Id.* at 50 (quoting and adding emphasis to *Helling v. McKinney*, 509 U.S. 25, 33, 34-35 (1993)).

Although the state provided some information for *in camera* review by the district court, it did not ask this court to file those materials under seal, or otherwise. *See* Circuit Rule 27-13; Fed. R. App. P. 10(b)(2). Nor has the state offered any indication of what those materials might be or how they might inform a decision about whether the drug would function as intended. Because we do not know what was before the district court due to the state's failure to provide the materials, we cannot say the district court abused its discretion in granting a temporary stay.

The Supreme Court standards, and our legal process, assume that the parties will be forthcoming with information necessary to make an informed and reasoned decision. Here, it was not provided.

AFFIRMED.