United States Court of Appeals
Fifth Circuit

F I L E D

October 8, 2013

Lyle W. Cayce

Clerk

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 13-70031

———

THOMAS WHITAKER; PERRY WILLIAMS; MICHAEL JOHN YOWELL,

Plaintiffs–Appellants,

versus

BRAD LIVINGSTON,
Executive Director of the Texas Department of Criminal Justice;
WILLIAM STEPHENS, Director,
Texas Department of Criminal Justice, Correctional Institutions Division;
JAMES JONES; EXECUTIONERS UNKNOWN,

Defendants–Appellees.

———

Appeal from the United States District Court
for the Southern District of Texas

———

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:

Plaintiffs Thomas Whitaker, Perry Williams, and Michael Yowell appeal the denial of a motion for preliminary injunction to restrain the defendant

No. 13-70031

state officials from conducting executions with pentobarbital procured from compounding pharmacies. The plaintiffs raise claims under the Eighth and Fourteenth Amendments, under the Supremacy Clause, and based on an access-to-the-courts argument. Yowell is scheduled for execution on October 9, 2013.

> To obtain a preliminary injunction, a plaintiff must establish

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction ill not disserve the public interest.

*Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006)). Because plaintiffs have not shown a likelihood of success on the merits, we affirm the denial of injunctive relief without examining the other prongs.

## I.

We first address plaintiffs' claims not explicitly based on the Eighth Amendment. They argue that the state's failure to disclose information regarding the method of execution in a timely manner violates a constitutional right of access to the courts. That argument fails for two reasons. First, as the district court noted, the state complied with requests for information about how it intended to execute Yowell promptly after the plaintiffs requested that information. The state gave information timely after it had the information.

Second, even if there was some delay because of uncertainty on the part of the state as to how it would proceed with executions, plaintiffs' access- to-the-courts argument still hinges on their ability to show a potential Eighth Amendment violation. One is not entitled to access to the courts merely to

No. 13-70031

argue that there might be some remote possibility of some constitutional violation. Plaintiffs must plead sufficient facts to state a cognizable legal claim. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully."). Therefore, plaintiffs must show some likelihood of success on the merits of the Eighth Amendment claim. A plaintiff cannot argue that if only he had infinite time—or even just a little bit more time—*then* he might be able to show a likelihood of success. To hold otherwise would be to eviscerate the first requirement of the standard for preliminary injunctions.

Plaintiffs contend that by failing to disclose the information timely, the state has thwarted the Supremacy Clause by hindering their ability to vindicate their federal rights. Again, the state has not failed to disclose timely. But moreover, this claim, too, rises and falls with the Eighth Amendment claim. The state does not dispute the applicability of the Supremacy Clause, which merely makes the Eighth Amendment effective against the state. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176–180 (1803); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 406 (1819). It does not provide its own cause of action.

Finally, plaintiffs maintain that Yowell is entitled to more procedural due process under the Fourteenth Amendment. To make such a claim, plaintiffs must demonstrate that Yowell has a cognizable liberty or property interest. *See Sepulvado v. Jindal*, No. 13-70007, 2013 WL 4711679, at *4 (Aug. 30, 2013). That claim is arguably foreclosed by *Sepulvado*, which held that uncertainty as to the method of execution does not amount to a cognizable liberty interest. *Id.* Moreover, the state has disclosed the requested

3

No. 13-70031

information regarding the execution, and plaintiffs have not shown why the hearing on the preliminary injunction was insufficient process.

Even if the facts here were sufficiently different from those in *Sepulvado*, plaintiffs would still have to show success at least on the Eighth Amendment claim. Even if the Fourteenth Amendment sometimes protects liberty interests not explicitly enumerated in the Constitution, we know of no case, in the context of executions, in which the Supreme Court has found a liberty interest to exist, based on the contours of the Eighth Amendment, that goes beyond what that Amendment itself protects. We therefore turn to the Eighth Amendment claim.

## II.

Under *Baze v. Rees*, 553 U.S. 35, 61 (2008),

> [a] stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. He must show that the risk is substantial when compared to the known and available alternatives.

A plaintiff can therefore succeed on an Eighth Amendment claim in this context only if he can establish both that the state's protocol "creates a demonstrated risk of severe pain" and that that risk "is substantial when compared to the known and available alternatives."

Plaintiffs contend that they can "clearly meet" success on either prong, but their more serious contention is that if they cannot demonstrate that the *Baze* standard is met, it is because they need more time to do so. It is indeed not unreasonable to assume that if a prisoner has the right to be free from a demonstrated risk of severe pain when compared to a known and available alternative, he ought to have the opportunity to prove the risk of pain and the availability of alternatives. Even so, plaintiffs must point to *some* likelihood

that such pain will be severe and that some alternative may exist. It is unacceptable to claim that some unspecified amount of time is required, just in case they might happen to be able to show that there might be some risk of potentially excessive pain.

If the state were using a drug never before used or unheard of, whose efficacy or science was completely unknown, the case might be different. The state, however, will use a standard amount of pentobarbital for Yowell's execution. Plaintiffs argue that because the state has transitioned to using compounding pharmacies, there are known unknowns because of the possibility of contamination. That may be true, but plaintiffs must point to *some* hypothetical situation, based on science and fact, showing a likelihood of severe pain.

None of the examples in their brief shows any such possibility based on the known unknowns stemming from obtaining drugs from a compounding pharmacy. Plaintiffs claim that compounding pharmacies are not subject to stringent FDA regulations, that the active ingredients are obtained from a global "grey market," and that there is a chance of contamination. Plaintiffs claim, along with their expert, that this increases the risk of a more painful injection, a burning sensation if the acidity is incorrect, or conditions such a pulmonary embolism. They assert it increases the risk of a potency problem that may make the drug ineffective in killing (although the laboratory results for the drug showed a 98.8% potency).

All of these things may be true. But what plaintiffs are demanding is that, in effect, they be permitted to supervise every step of the execution process. They have no such entitlement. They must offer some proof that the state's own process—that its choice of pharmacy, that its lab results, that the training of its executioners, and so forth, are suspect. Plaintiffs have pointed to only hypothetical possibilities that the process was defective.

Even if plaintiffs' hypothetical situations were to come to pass, they would merely demonstrate a "risk of severe pain," not that that risk was substantial when compared to known and available alternatives. The demonstrated risk of pain is merely the risk concomitant with any use of drugs—that they might fail or cause side effects from contamination or a lack of potency. Plaintiffs have not shown that the risk of such contamination is "substantially" greater than from a customary pharmacy or from any other source that the state could use for its drugs, as required by *Baze*.

The plaintiffs basically argue not just that there are known unknowns, but that there may be unknown unknowns; that, if only they had more time, they might discover *something* wrong with the drugs. Unknown unknowns, however, are insufficient to demonstrate a risk of harm; something more is needed to meet the difficult preliminary-injunction standard.

The closest case on point does not help the plaintiffs. In *Landrigan v. Brewer*, 2010 WL 4269559 (D. Ariz. Oct. 25, 2010), the plaintiff had pointed to a similar risk of harm where the state received its drugs from foreign, non-FDA-approved sources and did not reveal, in a timely manner, the source of the drugs. The plaintiff alleged a more concrete risk than here:

> According to Plaintiff, because [the] supply of sodium thiopental lacks the appropriate safeguards, it could be "contaminated with toxins that cause pain, as opposed to unconsciousness" or could fail to properly anesthetize him, thus resulting in excruciating pain when the second and third drugs are administered. Plaintiff further alleges that Arizona has feasible alternatives—it can obtain sodium thiopental from Hospira when the company starts manufacturing the drug again in early 2011, or it can use another available, FDA-approved barbiturate.

*Id.* at *5. The district court concluded that the "use of sodium thiopental from a non-FDA-approved source raises issues regarding its efficacy and possible side-effects," so the court was "unable to determine whether the drug was

6

produced by a foreign company that follows standard operating procedures for the drug's manufacture or that has no history of contamination in manufacturing the product." *Id.* at \*10.  The court thus accepted the plaintiff's showing that "such drugs are more likely to contain harmful contaminants," and it issued a stay of execution.  *Id.*  The Ninth Circuit affirmed.  625 F.3d 1144 (9th Cir. 2010).

The Supreme Court, however, vacated the stay in a one-paragraph opinion.  *Brewer v. Landrigan*, 131 S. Ct. 445 (2010).  It held: "There is no evidence in the record to suggest that the drug obtained from a foreign source is unsafe.  The district court granted the restraining order because it was left to speculate as to the risk of harm.  But speculation cannot substitute for evidence that the use of the drug is 'sure or very likely to cause serious illness and needless suffering.'"  *Id.* (quoting *Baze*, 553 U.S. at 50; internal citation and quotation marks omitted).

Thus, even in light of a plausible scenario—that the foreign drug could contain a specific contaminant that would render the anesthetic ineffective—the Supreme Court held that mere speculation is not enough.  There must be some indication in the record that the drug is *very likely to cause* needless suffering.  There is no such evidence in the record before us.

The order denying injunctive relief is AFFIRMED.  Yowell's motion for stay of execution is DENIED.