# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-70014

United States Court of Appeals
Fifth Circuit

**FILED**
April 7, 2014

Lyle W. Cayce
Clerk

TOMMY LYNN SELLS; RAMIRO HERNANDEZ,

Plaintiffs - Appellees

v.

BRAD LIVINGSTON, Executive Director, Texas Department of Criminal Justice, WILLIAM STEPHENS, Director, Texas Department of Criminal Justice, Correctional Institutions Division, JAMES JONES, Senior Warden, Huntsville Unit, and UNKNOWN EXECUTIONERS,

Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before SOUTHWICK, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:

The district court on April 2, 2014, enjoined the State of Texas from executing Tommy Lynn Sells or Ramiro Hernandez. The State appealed. Another panel of this court reversed the injunction as to Sells. As to Hernandez, we REVERSE the district court's order and GRANT the motion to vacate the stay of execution.

## BACKGROUND

In 2000, Hernandez was convicted and sentenced to death in Texas state court for murdering Glen Lich. Hernandez was employed by Glen Lich and had been living in a cabin on the Lich property as part of his compensation.

No. 14-70014

The evidence at trial established that on October 14, 1997, Hernandez knocked on the door of the Lich's house and Glen went outside with him. Lera Lich, Glen's wife, saw them walk away from the house. A short time later, Hernandez returned to the door of the main house and entered. Lera noticed he had blood on his hands and face and a knife in his hand. Hernandez held the knife to Lera's neck and sexually assaulted her twice. Hernandez then made a phone call, tied Lera to the bed with towels he had torn up, and covered her head with a blanket. Hernandez asked for the keys to Lera's vehicle, went outside and started the vehicle, but turned the ignition off a few minutes later. He went back into the house, made more calls, and sexually assaulted Lera again. Hernandez continually threatened to harm Lera's mother, who was in another room asleep. Hernandez then fell asleep on the bed with Lera. She escaped as he slept, ran to a neighbor's house, and called law enforcement.

Two deputies arrived at the Lich home to find Hernandez still sleeping in Lera's bed. They arrested him and found Glen's body on the ground behind a shed on the property. The medical examiner testified Glen had been bludgeoned with a crow bar and his death caused by traumatic injury to the head and brain. DNA analysis showed the blood on Hernandez's hands and pants was consistent with that of Glen Lich.

Hernandez was indicted, convicted after a jury trial of capital murder, and sentenced to death. He appealed his conviction and sentence and sought habeas relief in both state and federal courts. *See Hernandez v. Stephens*, 537 F. App'x 531, 533-34 (5th Cir. 2013) (detailing the procedural history of Hernandez's case starting with his conviction).

On April 1, 2014, Hernandez and another death-row inmate, Tommy Lynn Sells, filed a Section 1983 complaint in the United States District Court for the Southern District of Texas. They sought a TRO to stay their imminent executions. They also sought to have the State ordered to disclose information

2

about the lethal drugs that would be used to execute them.  On April 2, the district court granted a temporary injunction, required the disclosure under an acceptable protective order and a stay of execution until after disclosure.

The State immediately appealed the order as to both death-row inmates. As to Sells, another panel of this court vacated the stay of execution and reversed the preliminary injunction.  *Sells v. Livingston*, No. 14-70014, USDC No. 4:14-CV-832 (5th Cir. Apr. 2, 2014, revised April 4, 2014).  The Supreme Court denied a stay and Sells was executed on April 3.  *See Sells v. Stephens*, No. 13-8284 (Apr. 3, 2014) (order denying cert.).

## DISCUSSION

This panel is not bound by the *Sells* panel's decision because it was not a published opinion.  We are, though, convinced by its reasoning.  The claims of both inmates were brought in a common complaint under Section 1983, and ruled upon by the district court in a single order.  No distinctions between the two inmates relevant to the issues before us have been argued by anyone.

We review a preliminary injunction for abuse of discretion.  *Janvey v. Alguire*, 647 F.3d 585, 591-92 (5th Cir. 2011).  The determinative issue before both panels is whether this preliminary injunction and stay of execution granted to Hernandez and Sells was based on a showing of "a substantial likelihood of success on the merits" and that the balance of harms tip in their favor.  *See Tamayo v. Stephens*, No. 14-70003, 2014 WL 241744, at *3 (5th Cir. Jan. 22, 2014) (citing *Adams v. Thaler*, 679 F.3d 312, 318 (5th Cir. 2012) (stay of execution), and *Janvey*, 647 F.3d at 595 (preliminary injunction)).  The elements a plaintiff must establish to secure a preliminary injunction are a likelihood of success on the merits, a substantial threat of irreparable injury, that the threatened injury outweighs any harm that will result if the injunction

No. 14-70014

is granted, and that the injunction will not disserve the public interest. *Janvey*, 647 F.3d at 595.

The information both inmates seek, as the *Sells* panel described it, is

the source of the pentobarbital, documentation reflecting the purchase of the drug, the timing and means of storage of the drug, the date of manufacture/mixing of the drug, any lot numbers which may exist, the raw ingredients used to make the drug and the source of same, the testing that was conducted on the drug and the results of that testing, and the laboratory and names of its personnel which conducted the testing.

*Sells*, No. 4:14-CV-832, at *4. Further, the *Sells* panel explained what the State has already disclosed:

The State has . . . provided [that] the execution will be carried out consistent with the Texas Department of Criminal Justice's Execution Procedure established on July 9, 2012, and implemented in the seven most recent executions. Under this procedure, the TDCJ will administer a five-gram dose of pentobarbital obtained from a licensed compounding pharmacy within the United States. The batch from which the dose will be taken has been tested by an independent laboratory. That test revealed that it has a potency of 108%, and is free of contaminants.

Hernandez is scheduled to be executed in accordance with execution procedures promulgated by the TDCJ on July 9, 2012, and known by counsel. The State of Texas has used pentobarbital in thirty executions, and other states have used the drug. The single-drug protocol is valid. *Thorson v. Epps*, 701 F.3d 444, 447 n.3 (5th Cir. 2012).

The district court interpreted a recent decision of this court to require that the inmates be provided the requested information. *See Whitaker v. Livingston*, 732 F.3d 465 (5th Cir. 2013). In that decision we held that there must be some proof, not just hypothetical possibilities, that the execution process was constitutionally defective:

4

> They must offer some proof that the state's own process—that its choice of pharmacy, that its lab results, that the training of its executioners, and so forth, are suspect. Plaintiffs have pointed to only hypothetical possibilities that the process was defective.

*Id.* at 468. The district court here decided that the State must provide the information needed to determine whether the showing under *Whitaker* could be made. The district court held that only upon receiving further details about the drugs could specific objections to the execution process be articulated.

The *Sells* panel reversed. It determined that *Whitaker* did not create disclosure requirements but had held "no more than petitioner had failed to show a likelihood of success that his 14th and 8th Amendment rights would be violated." *Sells*, No. 14-70014, at *5. We agree. Our interpretation of *Whitaker* is guided by the holdings of a slightly earlier decision of this court. *See Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013), *cert. denied*, — S. Ct. —, 2014 WL 284957 (Apr. 7, 2014). There, an inmate argued the State must disclose its execution protocol in order for the court to determine whether the protocols satisfied his due process rights. *Id.* at 418. The court disagreed because the assertion of a necessity for disclosure "does not substitute for the identification of a cognizable liberty interest." *Id.* at 419. No appellate decision had yet held that obtaining information about execution protocols was a liberty interest, which meant that failing to disclose could not be a due-process violation. *Id.* at 419-20.

A death-row inmate is entitled to an injunction if he points to "*some* hypothetical situation, based on science and fact, showing a likelihood of severe pain." *Whitaker*, 732 F.3d at 468. Hernandez speculates that because the State has a new source of compounded pentobarbital, there are unknowns regarding possible contamination and improper compounding. "[M]ere

speculation is not enough." *Id.* at 469.  Hernandez has failed to demonstrate a likelihood of success on the merits.

We GRANT the motion to vacate the stay and REVERSE the preliminary injunction.