# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————

No. 15-70004

———————

ROBERT CHARLES LADD,

United States Court of Appeals
Fifth Circuit

**FILED**

January 28, 2015

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

BRAD LIVINGSTON, Executive Director, Texas Department of Criminal Justice; WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION; JAMES JONES, Senior Warden, Huntsville Unit Huntsville, Texas; UNKNOWN EXECUTIONERS,

Defendants - Appellees

————————————

Appeal from the United States District Court
for the Southern District of Texas

————————————

Before HIGGINBOTHAM, DAVIS, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Robert Charles Ladd was convicted of capital murder and sentenced to death. He is scheduled to be executed by the State of Texas on January 29, 2015. On January 27, 2015, after the Supreme Court granted certiorari in *Glossip* v. *Gross*, Ladd filed a section 1983 lawsuit alleging that the state's method of execution would violate his Eighth and Fourteenth Amendment rights. The district court denied his motion for a preliminary injunction or temporary restraining order. Compelled by our court's precedent, we AFFIRM.

I.

This case has a complex factual and procedural background, which we laid out in detail in our earlier opinion affirming the district court's denial of habeas relief.[1] We briefly summarize here.

On August 23, 1997, Ladd was convicted of capital murder for the rape and murder of Vicki Ann Garner. A Texas state jury imposed the death penalty four days later. The Texas Court of Criminal Appeals affirmed Ladd's sentence and conviction on direct appeal in October 1999.[2] After unsuccessfully seeking state habeas relief, he filed his first application for federal habeas relief on January 18, 2001, raising a claim that he received ineffective assistance of counsel because his attorney had not raised evidence of Ladd's intellectual disability during the punishment phase of the trial.[3] The district court denied habeas relief and we affirmed.[4]

In 2002, the Supreme Court, in *Atkins* v. *Virginia*, altered the capital punishment landscape by holding that individuals who are intellectually disabled are categorically ineligible for the death penalty.[5] Following this decision, Ladd filed a second petition for state habeas relief, which was denied without an evidentiary hearing or an opportunity for him to develop his *Atkins* claim.[6] We authorized the filing of a second habeas petition in the district court. After holding an evidentiary hearing, the district court denied Ladd's petition, concluding that he had failed to establish by a preponderance of the

---

[1] *Ladd* v. *Stephens*, 748 F.3d 637 (5th Cir. 2014).
[2] *Id.* at 640. The United States Supreme Court denied Ladd's petition for a writ of certiorari on April 17, 2000. *Id.*
[3] *See id.* Following the Supreme Court's recent opinion in *Hall* v. *Florida*, 134 S. Ct. 1986, 1990 (2014), we use the term "intellectual disability" where "mental retardation" had previously been used.
[4] *Ladd*, 748 F.3d at 640.
[5] 536 U.S. 304, 321 (2002).
[6] *Ladd*, 748 F.3d at 641.

evidence that he was intellectually disabled.[7]  We affirmed.[8]  The Supreme Court denied Ladd's petition for a writ of certiorari on October 6, 2014.[9]

On January 23, 2015, the Supreme Court granted certiorari in *Glossip* v. *Gross*,[10] a Tenth Circuit case that upheld the constitutionality of Oklahoma's execution process, which involves a three-drug protocol: midazolam hydrochloride, pancuronium bromide, and potassium chloride.[11]  Four days later, on January 27, 2015, Ladd filed a complaint in federal district court[12] under 42 U.S.C. § 1983, alleging that the method of his execution violated his rights under the Eighth and Fourteenth Amendments.[13]  He sought a temporary or preliminary injunction to stay his execution.  The district court denied the motion for injunctive relief on January 27, 2015.[14]  Ladd appeals.[15]

## II.

### A.

We review the denial of a motion for preliminary injunctive relief for abuse of discretion.[16]

---

[7] *Id.* at 644.  While the evidentiary hearing was held in 2005, the district court did not issue its ruling until 2013.

[8] *Id.* at 647.

[9] *Ladd* v. *Stephens*, 135 S. Ct. 192 (2014) (mem.).

[10] Nos. 14-7955, 14-A761, 2015 WL 302647 (U.S. Jan. 23, 2015).

[11] *Warner* v. *Gross*, No. 14-6244, 2015 WL 137627, at *1-2 (10th Cir. Jan. 12, 2015).

[12] Ladd's complaint was jointly filed with Garcia Glen White, who was originally scheduled to be executed on January 28, 2015.  On January 27, 2015, the Texas Court of Criminal Appeals stayed White's execution pending further order.  That cause, which raises identical issues to those addressed in this case, is being adjudicated by a separate panel of this court.

[13] In *Hill* v. *McDonough*, 547 U.S. 573, 580-81 (2006), the Supreme Court held that section 1983 was a proper vehicle for bringing a challenge to the specific manner of execution employed by the state.  This is in contrast to a challenge to the sentence of death, which can only be brought through a habeas petition.  *See id.* at 579-80.

[14] *See* Mem. & Order, Docket No. 4:15-cv-00233, ECF No. 9.  Also on January 27, 2015, the Texas Court of Criminal Appeals dismissed Ladd's second application for a writ of habeas corpus and denied his motion for a stay of execution.

[15] Concurrent with his appeal, Ladd moves in this court for a stay of execution and for permission to proceed in forma pauperis.

[16] *Trottie* v. *Livingston*, 766 F.3d 450, 451 (5th Cir. 2014).

> To be entitled to a preliminary injunction, a movant must establish (1) a likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest.[17]

We are also mindful of the Supreme Court's admonition that "[f]iling an action that can proceed under [section] 1983 does not entitle the complainant to an order staying the execution as a matter of course."[18]  Rather, "equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts."[19]

## B.

Following the Supreme Court's decision in *Baze* v. *Rees*,[20] our court held that: "[a] plaintiff can . . . succeed on an Eighth Amendment claim in this context only if he can establish both that the state's [execution] protocol creates a demonstrated risk of severe pain and that that risk is substantial when compared to the known and available alternatives."[21]  Ladd argues that he is likely to succeed on his claim that there is a substantial risk that Texas's execution protocol will cause him severe pain, in violation of the Eighth Amendment.  In light of our court's binding precedent, we cannot agree.

We have repeatedly upheld against Eighth Amendment challenge Texas's Execution Procedure of July 9, 2012, which involves the use of a single drug, pentobarbital.[22]  The execution protocol at issue in those cases is

---

[17] *Id.* at 452 (citing *Sells* v. *Livingston*, 750 F.3d 478, 480 (5th Cir. 2014)).  This standard is essentially the same as the framework for deciding whether to grant a stay of execution.  *See Adams* v. *Thaler*, 689 F.3d 312, 318 (5th Cir. 2012).

[18] *Hill*, 547 U.S. at 583-84.

[19] *Id.*

[20] 553 U.S. 35, 61 (2008) (plurality op.).

[21] *Whitaker* v. *Livingston*, 732 F.3d 465, 468 (5th Cir. 2013).

[22] *See, e.g.*, *Trottie* v. *Livingston*, 766 F.3d 450, 452-53 (5th Cir. 2014); *Campbell* v. *Livingston*, 567 F. App'x 287, 289 (5th Cir. 2014) (unpublished); *Sells* v. *Livingston*, 750 F.3d

essentially the same as that the State plans to use here: they involve the use of an unexpired 5 gram dose of pentobarbital obtained from a licensed compounding pharmacy, which has been tested by an independent laboratory and found to have a potency of greater than 100% and to be free of contaminants.[23]  Under our circuit's rule of orderliness, these decisions, involving the application of essentially the same facts to the same law, control our own, and require us to deny the motion for injunctive relief.[24]

In an attempt to distinguish this precedent, Ladd raises two arguments. First, he argues that compounded drugs are unregulated and subject to quality and efficacy problems.  This argument, however, is essentially speculative, and the Supreme Court has held that "speculation cannot substitute for evidence that the use of the drug is '*sure or very likely* to cause serious illness and needless suffering.'"[25]  Rather, to succeed, our precedent requires Ladd to "offer some proof that the state's own process – that its choice of pharmacy, that its lab results, that the training of its executioners, and so forth, are suspect."[26] "[H]ypothetical possibilities that the process was defective" are not enough for a stay,[27] and here, Ladd puts forth only hypotheticals.  Second, Ladd points to a series of executions conducted in other states, using multi-drug protocols not at issue here, which caused or appeared to cause the prisoner severe pain.  We do not diminish the gravity of these incidents – as Justice Sotomayor,

---

478, 480-81 (5th Cir. 2014); *Sells* v. *Livingston*, 561 F. App'x 342, 344-45 (5th Cir. 2014) (unpublished); *Thorson* v. *Epps*, 701 F.3d 444, 447 n.3 (5th Cir. 2012) (holding, in a decision addressing Mississippi's execution process, that Texas's one-drug protocol is acceptable under *Baze*).

[23] *See Trottie*, 766 F.3d at 452; Def.s' Opp'n Temporary Injunctive Relief & Mot. TRO Seeking Stay Execution ("Defs' Opp'n"), at 2.

[24] *See United States* v. *Traxler*, 764 F.3d 486, 489 (5th Cir. 2014).

[25] *Brewer* v. *Landrigan*, 131 S. Ct. 445, 445 (2010) (mem.) (quoting *Baze*, 553 U.S. at 50 (plurality op.)).

[26] *Whitaker*, 732 F.3d at 468.

[27] *Id.*

dissenting from the denial of a stay of execution earlier this month, wrote, "the Eighth Amendment guarantees that no one should be subject to an execution that causes searing, unnecessary pain before death."[28]  None of these executions have apparently used a single-drug pentobarbital injection from a compounded pharmacy which, as the State points out in its brief, appears to have been used without significant incident for the last fourteen executions carried out by the State.[29]  Ladd does point to the fact that pentobarbital was used as part of a three-drug cocktail in at least one of the out-of-state executions that appeared to cause the prisoner pain, and that an expert stated that the prisoner's adverse reaction was "consistent with contaminated pentobarbital sodium injection."  Given the different protocols in use, as well as the fact that the State has put forward evidence indicating that the pentobarbital that will be used is not contaminated, this evidence is not sufficient to demonstrate that "the use of the drug is '*sure or very likely* to cause serious illness and needless suffering.'"[30]

### III.

Against this backdrop, Ladd nonetheless argues that we should stay his execution because of the Supreme Court's grant of certiorari in *Glossip*.  That case addresses an Eighth Amendment challenge to Oklahoma's three-drug protocol.  None of the three questions presented in that petition are directly on point with this case, however.  The first question looks to whether a three-drug execution protocol is constitutionally permissible, an issue not relevant when the state uses a one-drug protocol.  The second question asks whether the *Baze*

---

[28] *Warner* v. *Gross*, 135 S. Ct. 824 (2014) (mem.) (Sotomayor, J., dissenting from denial of stay of execution).

[29] Press reports indicate that one prisoner said that "[i]t does kind of burn. Goodbye," as the pentobarbital took effect.  The media report indicates that all movement stopped "[w]ithin seconds."  Defs.' Opp'n at 20.

[30] *Landrigan*, 131 S. Ct. at 445 (quoting *Baze*, 553 U.S. at 50.

standard applies when states are not using a protocol "substantially similar" to the one that the Supreme Court considered in *Baze*. Our court has already held that the Texas execution protocol is substantially similar to the *Baze* standard.[31] Finally, the third question asks whether "a prisoner [must] establish the availability of an alternative drug formula even if the state's lethal-injection protocol, as properly administered, will violate the Eighth Amendment."[32] We have previously held, however, that the proper administration of the Texas procedure comports with the Eighth Amendment.[33]

In any event, whatever our speculation about how the Supreme Court may alter the law in the future, we are bound to follow our precedent as it exists today.[34] This request for a stay is best made to the Supreme Court, the body most aware of *Glossip*'s potential.

## IV.

We AFFIRM the district court's order denying the motion for temporary injunctive relief. We DENY Ladd's motion for stay of execution. We GRANT Ladd's motion to proceed in forma pauperis.

---

[31] *See Raby* v. *Livingston*, 600 F.3d 552, 558-60 (5th Cir. 2010)*; see also Thorson* v. *Epps*, 701 F.3d 444, 447 & n.3 (5th Cir. 2012).

[32] Pet. Writ Certiorari, at i., *Warner* v. *Gross*, No. 14-7955 (U.S. 2015).

[33] *See, e.g.*, *Sells* v. *Livingston*, 750 F.3d 478, 480-81 (5th Cir. 2014); *see also Raby*, 600 F.3d at 560 (concluded that plaintiff "has failed to establish that the Texas lethal injection protocol creates a demonstrated risk of severe pain").

[34] *See Wicker* v. *McCotter*, 798 F.2d 155, 157-58 (5th Cir. 1986) (holding that, notwithstanding the fact that the Supreme Court had granted a writ of certiorari in a related case, "we must follow our circuit's precedents and deny . . . a stay of execution").