# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 12, 2009

Charles R. Fulbruge III
Clerk

No. 08-20227

NJIDEKA E. MUONEKE

Plaintiff-Appellant

v.

COMPAGNIE NATIONALE AIR FRANCE also known as, Societe Air France

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
No. 4:05-CV-4289

Before WIENER, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Njideka Muoneke claims that the defendant-appellee Compagnie Nationale Air France is liable for items of her luggage lost during international carriage. In the prior appeal in this case, *Muoneke v. Compagnie Nationale Air France (Muoneke I)*, we reversed the district court's grant of summary judgment to Air France because we found that a genuine issue of material fact existed concerning whether Muoneke had provided notice of her

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

loss to Air France.[1]  This appeal arises out of the district court's proceedings on remand, which culminated in a judgment in favor of Muoneke.  We reverse the district court's judgment in part and render judgment for Muoneke; we affirm in part; we reverse and remand in part.

## I. FACTS AND PROCEEDINGS

Muoneke traveled from Houston, Texas to Lagos, Nigeria on an Air France flight in 2004.  During a change of planes in Paris, she was forced to check her carry-on bag onboard the new aircraft at the insistence of Air France employees.  When Muoneke unpacked that bag after her arrival in Lagos, she discovered that items were missing, including a digital camera and $900 in cash.  After a bench trial, the district court concluded that Muoneke's loss totaled $1,242.79, a sum that neither party contests on appeal.  The court held that Air France was liable for the loss because the airline had a "responsibilit[y] to safely transport the baggage."

That was not, however, the end of the matter, because claims arising out of damage to baggage during carriage aboard international flights are governed by treaties that structure the carrier's liability and impose monetary limits on

---

[1] 247 F. App'x 570 (5th Cir. 2007) (per curiam) (unpublished).  We note that there are serious questions concerning the appropriateness of federal jurisdiction in this case, but our prior opinion explicitly ruled on that question, *id.* at 571, and we do not indulge in "perpetual re-examination of precisely the same issue of subject matter jurisdiction."  *Free v. Abbott Labs., Inc.*, 164 F.3d 270, 272-73 (5th Cir. 1999); *see Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 n.5 (1988).  We therefore do not address the well-pleaded complaint rule, *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005); *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 817 (1986);  *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916); *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 153-54 (1908), or complete preemption, *see Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546, 553 (5th Cir. 2008), because we cannot say that a "glaring error" occurred in this case.  *Free*, 164 F.3d at 273.

that liability. The district court determined that under the Warsaw Convention, Air France was entitled to limit its liability for Muoneke's baggage to 17 special drawing rights ("SDRs") multiplied by the weight of the "damaged baggage" in kilograms. Having settled on liability, the correct formula for the monetary cap on liability, and the quantum of damages, the district court then determined that one SDR was equivalent to $1.58 at the time of trial and that the weight of the luggage was 5 kilograms. Accordingly, it awarded Muoneke $134.30. In so doing, the district court appears to have rejected Muoneke's arguments that Air France was at fault, rather than merely strictly liable for her loss and that her baggage qualified as carry-on, rather than checked luggage. She asserted that if either were the case, a higher damages cap should apply under the Warsaw Convention. The district court also rejected Air France's argument that it had no liability at all because its contract of carriage expressly disclaimed liability for damage to cameras, electronics, and cash in checked baggage.

Muoneke then timely applied for an award of attorneys' fees and costs. The district court concluded that the fee amount requested by Muoneke was reasonable, but Air France objected to any award of fees, arguing that they are not recoverable. After supplemental briefing, the district court agreed with Air France and declined to award fees, but did not rule on Muoneke's application for costs. This timely appeal followed.

## II. ANALYSIS

*1.    Standard of Review*

"The standard of review for a bench trial is well established: findings of fact are reviewed for clear error and legal issues are reviewed de novo."[2] Which convention governs Air France's limitation of liability and whether that governing convention provides a basis on which to award attorneys' fees and costs to Muoneke are questions of law,[3] which we review de novo.

*2.    Analysis*

   *A.    Applicable Convention*

On appeal, Muoneke claims that the district court erred by applying the Warsaw Convention's liability cap, rather than that of the Montreal Convention. We agree.  By its terms, the Montreal Convention supersedes the Warsaw Convention and governs Air France's liability in this case.[4] The United States Senate ratified the Montreal Convention on September 5, 2003, and the treaty

---

[2] *Grilletta v. Lexington Ins. Co.*, 558 F.3d 359, 364 (5th Cir. 2009) (per curiam) (internal quotation marks omitted).

[3] *See Lubke v. City of Arlington*, 455 F.3d 489, 498 (5th Cir. 2006); *Steel Coils, Inc. v. M/V Lake Marion*, 331 F.3d 422, 435 (5th Cir. 2003) (COGSA limitation of liability); *Hamman v. Sw. Gas Pipeline, Inc.*, 832 F.2d 55, 57 (5th Cir. 1987)  (decided by a quorum) (per curiam) (availability of attorneys' fees).

[4] Convention for the Unification of Certain Rules for International Carriage by Air art. 1, ¶ 1, May 28, 1999, ICAO Doc. 9740, *reprinted in* S. TREATY DOC. NO. 106-45, 1999 WL 33292734 (2000) [hereinafter Montreal Convention] ("This Convention applies to all international carriage of persons, baggage or cargo performed by aircraft for reward."); *id.* art. 55 & ¶ 1 ("This Convention shall prevail over any rules which apply to international carriage by air: 1. between States Parties to this Convention by virtue of those States commonly being Party to (a) the *Convention for the Unification of Certain Rules Relating to International Carriage by Air* Signed at Warsaw on 12 October 1929 (hereinafter called the Warsaw Convention) . . . .").

entered into force on November 4, 2003.[5] The damage to Muoneke's baggage occurred sometime during the two-day period of November 30-December 1, 2004, more than a year after the Montreal Convention entered into force. That convention's liability cap (1000 SDRs per passenger for baggage claims) therefore applies, not the Warsaw Convention's cap (17 SDRs per kilogram of damaged baggage for checked luggage).[6]

Air France's first counterargument — that the applicable contract of carriage limited Muoneke's recovery to 17 SDRs per kilogram — is meritless. The contract of carriage in fact incorporated the Montreal Convention, Article 26 of which states that "[a]ny provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this Convention shall be null and void."[7] Air France was therefore not entitled to cap its liability at 17 SDRs per kilogram when, as here, such a cap limits the carrier's liability to less than 1000 SDRs per passenger.

---

[5] *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 372 (2d Cir. 2004) (citing Press Statement, United States Department of State, Ratification of the 1999 Montreal Convention (Sept. 5, 2003); Media Note, United States Department of State, Entry Into Force of the 1999 Montreal Convention (Nov. 4, 2003)).

[6] *Compare* Montreal Convention art. 22, ¶ 2 ("In the carriage of baggage, the liability of the carrier in the case of destruction, loss, damage or delay is limited to 1000 Special Drawing Rights for each passenger . . . ."), *and id.* art. 17, ¶ 4 ("Unless otherwise specified, in this Convention the term 'baggage' means both checked baggage and unchecked baggage."), *with* Convention for the Unification of Certain Rules Relating to International Transportation by Air art. 22, ¶ 2 Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934) [hereinafter Warsaw Convention] ("In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of [17 SDRs] per kilogram."), *and id.* ¶ 3 ("As regards objects of which the passenger takes charge himself the liability of the carrier shall be limited to [332 SDRs] per passenger.").

[7] Montreal Convention art. 26.

Air France's second counterargument — that the applicable contract of carriage expressly disclaimed liability for the items at issue — is equally meritless. Article 17 of the Montreal Convention provides for strict liability in the case of damage to or loss of baggage.[8] If Air France could contract out of liability under Article 27 of the Montreal Convention,[9] as it claims it did in its contract of carriage with Muoneke, then Articles 17 and 26 would be meaningless. Under Air France's proffered reading, a contract of carriage providing that "no items in checked baggage are covered" could effectively eliminate all carrier liability for damage to baggage. Air France provides no limiting principle that would harmonize an expansively construed Article 27 with Articles 17 and 26. Its reading is therefore unpersuasive, and we decline to adopt it.[10]

---

[8] *Id*. art. 17, ¶ 2 ("The carrier is liable for damage sustained in case of destruction or loss of, or of damage to, checked baggage upon condition only that the event which caused the destruction, loss or damage took place on board the aircraft or during any period within which the checked baggage was in the charge of the carrier."); *see* S. TREATY DOC. NO. 106-45, 1999 WL 33292734, at *17 (2000) (explanatory note) ("Paragraph 2 [of Article 17 of the Montreal Convention] makes the carrier liable for destruction, loss, or damage to checked baggage caused by an event taking place on board the aircraft or while the baggage was in the charge of the carrier. The carrier may avoid liability to the extent that it proves the damage resulted from the inherent defect, quality, or vice of the checked baggage. . . . Thus, for checked baggage, as under the Warsaw Convention and its related instruments, the carrier is strictly liable for damages, subject to limited specified defenses.").

[9] Montreal Convention art. 27 ("Nothing contained in this Convention shall prevent the carrier from refusing to enter into any contract of carriage, from waiving any defences available under the Convention, or from laying down conditions which do not conflict with the provisions of this Convention.").

[10] We do not address all limitation-of-liability questions under the Montreal Convention today, only those presented by the carriage relationship at issue

Having established that the Montreal Convention should have been applied,[11] and using the district court's SDRs-to-dollars exchange rate to which the parties do not object,[12] we cap Air France's liability at $1580, which is in excess of the amount Muoneke claims she is entitled to recover. We therefore need not reach Muoneke's other assertions of error. Given the simple calculations involved, we also see no need to waste judicial resources by remanding this case to the district court for correction of the judgment on this point. Instead, we do it ourselves. The district court's judgment is reversed, and we render judgment in Muoneke's favor and against Air France in the amount of $1,242.79.

### B.    Fees and Costs

---

[11] Although our prior opinion in this case made reference to the Warsaw Convention (which perhaps accounts for the confusion on remand), the Warsaw Convention provision on which we focused in that case — requiring Muoneke to provide notice to Air France of her loss within a specific period of time — is identical in all relevant respects to the analogous provision of the Montreal Convention. Accordingly, as we did not explicitly determine before that the Warsaw Convention applied to Muoneke's claim, and as it was not necessary for us to do so implicitly to resolve the prior appeal, we are not bound on this question by the prior opinion under the doctrine of law of the case. *See Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001). Additionally, Air France probably waived any law-of-the-case arguments and definitely forfeited any waiver-below arguments by failing to assert and to brief them. *Lyndon Prop. Ins. Co. v. Duke Levy & Assocs., LLC*, 475 F.3d 268, 270 (5th Cir. 2007); *cf. United States v. Palmer*, 122 F.3d 215, 220-22 (5th Cir. 1997).

[12] The district court did not address the issue of the correct date on which to fix the exchange rate because the court considered the difference between the exchange rate at the time of the loss and the time of trial too inconsequential to deserve resolution. Instead, it used the more generous exchange rate, which was also the prevailing rate at the time of trial. As the parties do not dispute the exchange rate used, we see no need to address the timing issue in this case. We also note that inasmuch as the Montreal Convention does not use a per-kilogram measure to calculate the appropriate liability limitation in this case, we have no need to address whether the Warsaw Convention required the district court to use the weight of the damaged items or the weight of the bag in which they were contained.

We previously addressed the availability of attorneys' fees and costs for claims such as Muoneke's when the Warsaw Convention governed, holding them unavailable to prevailing plaintiffs under (1) that convention, (2) other federal law, or (3) state law.[13] In fact, any award of fees or costs in excess of the Warsaw Convention's liability cap would have been barred prior to the United States' ratification of the Hague Protocol of 1955 through its ratification of Montreal Protocol No. 4 in 1998.

The Montreal Convention takes a different approach. It does not bar the recovery of either fees or costs in excess of the liability caps found in Articles 21 and 22.[14] But neither does it provide an independent basis on which such amounts may be awarded. The plain language of the Convention states that a court is not *prevented* "from awarding, *in accordance with its own law*, . . . the court costs and the other expenses of the litigation."[15] Muoneke has identified no federal law that permits an award of attorneys' fees in this case, and the general rule that we employ requires each party to bear his own attorneys' fees

---

[13] *See Boehringer-Mannheim Diagnostics, Inc. v. Pan Am. World Airways, Inc.*, 737 F.2d 456, 459 (5th Cir. 1984); *Domangue v. E. Air Lines, Inc.*, 722 F.2d 256, 261 (5th Cir. 1984).

[14] Montreal Convention art. 22, ¶ 6 ("The limits prescribed in Article 21 and in this Article shall not prevent the court from awarding, in accordance with its own law, in addition, the whole or part of the court costs and of the other expenses of the litigation incurred by the plaintiff, including interest."); *see* S. TREATY DOC. NO. 106-45, 1999 WL 33292734, at *20 (2000) (explanatory note) ("This paragraph permits courts, in accordance with their own law, to award to plaintiffs court costs, other litigation expenses *(including attorneys fees)* incurred by the plaintiff, as well as interest, in addition to the amounts prescribed in Articles 21 and 22." (emphasis added)).

[15] Montreal Convention art. 22, ¶ 6 (emphasis added).

in the absence of a statute authorizing a fee award.[16] Muoneke has not invited our attention to any such statute, whether federal or state.[17]

Not so, however, for costs. The federal courts' "own law" does provide for an award of costs to a party in Muoneke's position.[18] Whether such an award would exceed $1580 (the limit of Air France's liability in this case) when added to Muoneke's recovery of damages is irrelevant under the Montreal Convention. We therefore remand to the district court for the sole purpose of tabulating the amount of costs to be awarded to Muoneke.[19]

Given the limited nature of our remand, and the typically uncontroversial method by which the amount of costs is fixed, we anticipate no difficulties. This

---

[16] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).

[17] We therefore need not pass on any questions of preemption or the use of state fee-shifting statutes in federal court in this appeal.

[18] FED. R. CIV. P. 54(d).

[19] We cannot determine from the record on appeal whether the district court passed on the question whether "the amount of the damages awarded, excluding court costs and other expenses of the litigation, . . . exceed[ed] the sum which the carrier [had] offered in writing to the plaintiff within a period of six months from the date of the occurrence causing the damage, or before the commencement of the action, if that is later." Montreal Convention art. 22, ¶ 6. If the district court did not reach this issue, it must do so before an award of costs is permissible that, when added to $1242.79, exceeds $1580. If the total of Muoneke's costs plus the damages she is to recover does not exceed $1580, the district court need not reach this question. If a written settlement offer in compliance with Section 6 of Article 22 was made, Muoneke may still recover costs, but only up to $1580 if Air France did not act or omit to act with the "intent to cause damage or recklessly and with knowledge that damage would probably result." Montreal Convention art. 22, ¶ 5. To the extent that the district court might have resolved that fact question of intent or recklessness previously, we vacate that determination because it was made under an erroneous legal standard, *viz.*, the Warsaw Convention rather than the Montreal Convention (although it is difficult to imagine that the two Conventions, employing essentially identical language, establish different standards). *See Pullman-Standard v. Swint*, 456 U.S. 273, 298-99 (1982). The district court may reach this question again if doing so is necessary for purposes of awarding costs.

panel nevertheless retains jurisdiction over this case until proceedings on remand have concluded so that we may efficiently dispose of any issues presented to us. It is long past time for this litigation over $1,242.79 to end.

REVERSED and RENDERED in part; AFFIRMED in part; REVERSED and REMANDED in part; jurisdiction RETAINED. Costs taxed against appellee.