# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20364

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2017

Lyle W. Cayce
Clerk

THOMAS WHITAKER; PERRY WILLIAMS,

Plaintiffs–Appellants,

versus

BRYAN COLLIER; WILLIAM STEPHENS;
JAMES JONES; UNKNOWN EXECUTIONERS,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas

Before SMITH, PRADO, and GRAVES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Thomas Whitaker and Perry Williams sued state officials under 42 U.S.C. § 1983 to challenge their method of execution under the First, Sixth, Eighth, and Fourteenth Amendments. Because the plaintiffs have not stated a claim on which relief can be granted, we affirm the dismissal of their complaint.

No. 16-20364

I.

Whitaker and Williams were convicted of capital murder and sentenced to death. Whitaker's conviction and sentence were affirmed in 2009,[1] Williams's in 2008.[2] They filed their original complaint in October 2013.[3] The district court dismissed because their date of execution had not been set, so the dispute was not ripe, but we reversed because "the current protocol is presumably 'the means that Texas will select for their execution.'" *Whitaker v. Livingston*, 597 F. App'x 771, 773, 774 (5th Cir. 2015) (per curiam).

On remand, the plaintiffs filed a second amended complaint (the subject of this appeal) with four counts. Count One alleges that the lack of a notification requirement, in Texas's execution protocol, for changes to the protocol violates the Eighth Amendment and the Fourteenth Amendment's Due Process Clause. Count Two alleges that the lack of a requirement that prisoners have access to counsel "during the events leading up to and during the course of their execution" violates the First, Sixth, and Eighth Amendments. Count Three alleges that the failure to conduct additional testing of the compounded pentobarbital (the execution drug), use of the compounded pentobarbital after its "Beyond Use Date" ("BUD"), and the absence of other appropriate safeguards violate the Eighth and Fourteenth Amendments. Count Four alleges that the failure to release, or the concealment of, information about the protocol violates the Eighth and Fourteenth Amendments. The defendants, referred to collectively as the Texas Department of Criminal Justice ("TDCJ"), moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

---

[1] *Whitaker v. State*, 286 S.W.3d 355, 357 (Tex. Crim. App. 2009).

[2] *Williams v. State*, 273 S.W.3d 200, 204 (Tex. Crim. App. 2008).

[3] Michael Yowell was also a complainant, but he was executed in October 2013. *See Whitaker v. Livingston*, 732 F.3d 465, 469 (5th Cir. 2013).

No. 16-20364

While the motion to dismiss was pending, the district court permitted limited discovery. During that time, Texas stipulated that it would conduct additional testing of the compounded pentobarbital before executing Whitaker and Williams.[4] The court eventually granted TDCJ's motion to dismiss all claims. It held that Counts One, Two, and the part of Count Three challenging the lack of additional safeguards were barred by the statute of limitations. It also ruled that Whitaker and Williams had failed to state a claim on the remaining issues. On appeal now,[5] we affirm the dismissal.

## II.

The statute of limitations for Section 1983 method-of-execution claims is the same as the general personal-injury limitations for the state of conviction. *Walker v. Epps*, 550 F.3d 407, 411–12 (5th Cir. 2008). In Texas, a personal-injury action must be brought "not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (West 2016). A method-of-execution cause of action accrues "on the date direct review of a plaintiff's conviction and sentence is complete" or "in the event a state changes its execution protocol after a death-row inmate's conviction has become final . . . on the date that protocol change becomes effective." *Walker*, 440 F.3d at 414.

The plaintiffs filed their original complaint more than two years after their convictions and sentences became final, so to benefit from a more recent accrual date, they must show a change in the protocol. They maintain that TDCJ's September 2013 change from manufactured to compounded

---

[4] At oral argument, TDCJ affirmed its commitment to retest the compounded pentobarbital.

[5] Whitaker's scheduled execution was called off because TDCJ was unable to complete the stipulated-to additional testing in time.

pentobarbital "constituted a substantial change to the TDCJ protocol" that "should be the date that limitations for [plaintiffs'] section 1983 claims accrued." Alternatively, they contend that limitations has not begun to run because they are subject to a continuing injury resulting from TDCJ's ability to change its protocol at any time. We must decide whether the change to compounded pentobarbital can serve as the substitute accrual date and, if so, for which specific parts of the protocol.[6]

*Walker* did not decide what kind of change would be sufficient to reset the accrual date or how much of the protocol would be challengeable. *Id.* at 415. So far, we have only assumed *arguendo* that the most recent change—in 2013—is the accrual date where the claims were time-barred regardless of the date chosen. *See* W*ood v. Collier*, No. 16-20556, ___ F. App'x ___, 2017 WL 892490, at *1 (5th Cir. Mar. 6, 2017) (per curiam). We did not decide whether that September 2013 date—which we termed "the most generous accrual point possible"—or an earlier date (given that "[s]ome of the aspects of Texas's death penalty protocol . . . have not changed since 2008") was the appropriate accrual date. *Id.* at *1 n.7.[7]

The Eleventh Circuit requires that, for the accrual date to reset, a change to the protocol must be substantial. *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275, 1280 (11th Cir.) (per curiam) (quoting another source). Moreover, "a claim that accrues by virtue of a substantial change in a state's

---

[6] The plaintiffs' argument that the law of the case prevents the application of a limitations bar was waived because they did not raise it in the district court. *See Muoneke v. Compagnie Nationale Air France*, 330 F. App'x 457, 461 n.11 (5th Cir. 2009) (per curiam). Even if it had not been waived, the district court was bound to apply the holding in *Whitaker*, 597 F. App'x at 774, that the plaintiffs could bring their Section 1983 suit against the existing execution protocol.

[7] To the extent that *Wood*, being unpublished, is not precedent, we now adopt its reasoning and conclusions as published precedent.

execution protocol is limited to the particular part of the protocol that changed." *Id.* at 1280–81. "In other words, a substantial change to one aspect of a state's execution protocol does not allow a prisoner whose complaint would otherwise be time-barred to make a 'wholesale challenge' to the state's protocol." *Id.* at 1281.

We agree with the Eleventh Circuit: To reset the accrual date, a change to an execution protocol must be substantial, and any new accrual date is applicable only to the portion of the protocol that changed. *See id.* at 1280–81. In permitting Section 1983 method-of-execution claims, the Supreme Court acknowledged that such claims, where they entail a stay of execution, can unreasonably delay imposition of the sentence. *Hill v. McDonough*, 547 U.S. 573, 583–84 (2006). "Repetitive or piecemeal litigation presumably would raise similar concerns." *Id.* at 585. The most straightforward way to avoid that is to place reasonable limits on the type of change that resets the accrual date instead of allowing a proliferation of claims that could indefinitely delay the sentence, as well as creating a perverse incentive for states to refuse to make the very changes the plaintiffs are seeking.

The definition of "substantial" requires further elaboration. The plaintiffs are correct that setting the level of abstraction at lethal injection, as the district court seemed to suggest,[8] is too strict. We cannot say that the use of any injectable substance that causes death is always an insignificant change, because there could be substances that do create a "substantial risk of serious harm." *Glossip v. Gross*, 135 S. Ct. 2726, 2737 (2015) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)). But a limit has to be drawn to avoid "[r]epetitive or piecemeal litigation." *Hill*, 547 U.S. at 585.

---

[8] *Whitaker v. Livingston*, No. H-13-2901, 2016 WL 3199532, at *5 (S.D. Tex. June 6, 2016).

No. 16-20364

Again, we follow the Eleventh Circuit. The plaintiff in *Gissendaner* challenged the constitutionality of Georgia's switch from manufactured to compounded pentobarbital. The court held that was "not a substantial change because the switch between two forms of the same drug does not significantly alter the method of execution." *Id.* at 1282. We agree.

Applying these rules, the district court was correct to dismiss Counts One, Two, and part of Three as time-barred. Whitaker's and Williams's convictions and sentences were affirmed by the Texas Court of Criminal Appeals in 2009 and 2008, respectively.[9] They sued in 2013, well after the expiration of the two-year limitations period for unchanged parts of the protocol. The lack of a notice requirement, the lack of access to counsel during the execution, and the list of additional safeguards in Count Three were all claims that existed as of the May 2008 execution protocol and have not been altered since.[10] These claims are time-barred.

The remaining claims in Count Three, regarding retesting and the BUD of the compounded pentobarbital, would be time-barred under the new rule, because the 2013 change to compounded pentobarbital is not substantial. But,

---

[9] *Whitaker*, 286 S.W.3d at 357; *Williams*, 273 S.W.3d at 204.

[10] *Wood*, ___ F. App'x ___, 2017 WL 892490, at *1 n.7. The plaintiffs challenge the basis for evaluating the timing of changes to the protocol by objecting to this court's taking judicial notice of Texas's 2008 execution protocol. They correctly note that the court cannot take judicial notice of the factual findings of another court. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998). But we can take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." *Id.* at 829 (internal quotation marks and citation omitted).

The 2008 execution protocol is such a document. Resolving this issue on remand would merely require TDCJ to come forward with the 2008 protocol, easily satisfying the second part of the *Taylor* test. The state's reliance on court filings in other cases for the contents of its own records is not our preferred approach. But it also was not an abuse of discretion for the district court to take judicial notice of the protocol under these circumstances.

6

No. 16-20364

in addition to the 2013 change, TDCJ also changed from a three-drug to a one-drug protocol between 2008 and 2012. Because no party raises whether that change is substantial, we do not decide that question. The plaintiffs also do not specifically identify the date of this change in their complaint, although their brief says it was in 2012. The district court identifies this date as well but relies on another case for that proposition.[11] Given the lack of briefing and the importance of this question, we assume, *arguendo* only, that these claims are not time-barred.[12]

Alternatively, the plaintiffs maintain that limitations have not run because the plaintiffs are subject to a continuing injury on account of the lack of a notice provision. This theory is all but foreclosed by *Walker*, 550 F.3d at 417, which addressed a similar claim regarding Mississippi's execution protocol. That state defines a continuing tort as "wrongful conduct that is repeated until desisted." *Id.* (quoting *Stevens v. Lake*, 615 So. 2d 1177, 1178 (Miss. 1993)). Based upon that definition, we held that the protocol was not a continuing tort because "[t]he challenged protocol will affect each plaintiff but once." *Id.* In Texas, a continuing tort occurs where "the wrongful conduct continues to effect additional injury to the plaintiff until that conduct stops."[13] Given the similarities in definitions, TDCJ's execution protocol also is not a continuing tort under *Walker*.

---

[11] *Whitaker*, 2016 WL 3199532, at *5 (quoting *Trottie v. Livingston*, 766 F.3d 450, 453 (5th Cir. 2014)).

[12] Count Four alleges an ongoing concealment of information independent of the protocol itself, but this distinction is not discussed in the briefing either. We also assume *arguendo* that this claim is not time-barred.

[13] *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 451 (5th Cir. 2007) (quoting *Upjohn Co. v. Freeman*, 885 S.W.2d 538, 542 (Tex. App.—Dallas 1994, writ denied)). "Although often used by Texas intermediate courts, '[t]he Texas Supreme Court has not "endorsed nor addressed" the concept of the continuing tort doctrine.'" *Id.* (quoting *Walston v. Stewart*, 187 S.W.2d 126, 129 (Tex. App.—Waco 2006, pet. denied)).

No. 16-20364

III.

Even if the plaintiffs sued timely, they have failed to state a claim.[14]  A dismissal for failure to state a claim under Rule 12(b)(6) is reviewed "*de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012) (internal quotation marks and citation omitted).  A complaint must be "plausible on its face"[15] based on "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17]

A.

The plaintiffs rely on several constitutional amendments, but the core of their suit is a challenge to the method of execution under the Eighth Amendment.  In *Glossip*, 135 S. Ct. at 2737, a majority of the Court, in reviewing a preliminary injunction, adopted two elements for a method-of-execution claim. The method of execution must first "present[] a risk that is *sure or very likely* to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers."  *Id.* (quoting *Baze*, 553 U.S. at 50).  "[T]here must be a substantial risk of serious harm, an objectively intolerable risk of harm that

---

[14] Given the recurring nature of execution-protocol claims, it is important to rule both on the limitations question and on the validity of the substantive claim, so we make this as an alternative holding.  "This circuit follows the rule that alternative holdings are binding precedent and not *obiter dicta*." *United States v. Bueno*, 585 F.3d 847, 850 n.3 (5th Cir. 2009) (quoting *Pruitt v. Levi Strauss & Co.*, 932 F.2d 458, 464 (5th Cir. 1991)); *accord United States v. Peters*, 364 F. App'x 897, 898 (5th Cir. 2010) (per curiam).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[16] *Id.*

[17] *Id.*; s*ee generally* 2 MOORE'S FEDERAL PRACTICE § 12.34[1][a], at 12-77 through 12-83 (3d ed. 2017).

prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." *Id.* (quoting *Baze*, 553 U.S. at 50). Second, the plaintiff "must identify an alternative that is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'" *Id.* (quoting *Baze*, 553 U.S. at 52). We use those same elements when reviewing whether the plaintiffs have sufficiently pleaded a method-of-execution claim to survive a Rule 12(b)(6) motion to dismiss.[18] The plaintiffs have not done that.

### B.

Count Three addresses the method-of-execution claims regarding the compounded pentobarbital itself. Under the first element of *Glossip*, the plaintiffs allege that the fact that there was only a single test of the execution drugs conducted before delivery to TDCJ means that there is a substantial risk of serious harm, because "this lack of information and testing makes it impossible to determine to what extent the compounded pentobarbital has degraded and what the risks to the inmate might be." The plaintiffs further aver that the BUD that the compounding pharmacy assigned to the pentobarbital "is not supported by the relevant provisions of the [United States Pharmacopeia], and in fact, extends far beyond the recommended BUD." The plaintiffs maintain that this "raises grave concerns about potency, sterility, and stability of the pentobarbital, and thus of the risk of severe pain to the inmate."

With respect to the second element of *Glossip*, the plaintiffs contend that TDCJ could alternatively use "a single dose of an FDA approved barbiturate, applied with the appropriate safeguards and transparency that apply to both

---

[18] The en banc Sixth Circuit has just now reiterated these tests in rejecting a challenge to Ohio's protocol. *See Fears v. Morgan (In re Ohio Execution Protocol)*, No. 17-3076, 2017 U.S. App. LEXIS 11491, at *8–9 (6th Cir. June 28, 2017) (en banc).

the execution process and the manner in which the drugs are selected, purchased, stored, and tested."[19] The plaintiffs also theorize that the protocol does not contain various other safeguards that would allow TDCJ to "determine whether an inmate is subjected to severe pain at the time of his execution."[20]

### 1.

We addressed similar claims to Whitaker's and Williams's in *Wood*, in which the plaintiffs sought stays of executions as part of their Section 1983 method-of-execution claims, *to-wit*:

> (1) Texas's use of compounded pentobarbital absent re-testing shortly before execution violates the Eighth and Fourteenth Amendments by creating a substantial risk of severe pain; (2) Texas's refusal to disclose elements of its execution protocol violated Appellants' First, Eighth, and Fourteenth Amendment rights to be free from cruel and unusual punishment, due process, notice, an opportunity to be heard, and access to the courts; (3) voluntary re-testing of the pentobarbital that will be used to execute plaintiffs in another suit created a constitutional right to such re-testing for all prisoners; and (4) the lack of a requirement that Texas notify the Appellants of any changes to the drugs or to the lethal injection protocol that will be used to carry out their sentences impairs protection of their right to be free from cruel and unusual punishment and to due process under the Eighth and Fourteenth amendments.

*Wood v. Collier,* 836 F.3d 534, 537 (5th Cir. 2016).  In seeking a stay, the *Wood* plaintiffs relied solely on their retesting/equal-protection claim.  We denied the stay because the retesting itself was not required by the Eighth Amendment,

---

[19] In their complaint, the plaintiffs stated that TDCJ has in its "possession three other drugs purchased for possible use in executions: propofol, midazolam, and hydromorphone," but at oral argument they inexplicably claimed they did not so designate.

[20] Count Three alleges that these deficiencies also violate the Fourteenth Amendment, but that issue is not briefed by the plaintiffs so it is waived.  *See United States v. Stalnaker*, 571 F.3d 428, 439–40 (5th Cir. 2009).

irrespective of the equality of its application.[21]   "[R]elying on conjecture regarding the drugs' beyond-use dates and compounding, the prisoners urge[d] only that '[t]esting the compounded pentobarbital shortly before its use ensures the prisoner will not suffer severe pain . . . .'" *Id.* at 540. "But this assertion fail[ed] to reach the Eighth Amendment bar on unnecessarily severe pain that is sure, very likely, and imminent." *Id.*

The Eighth and Eleventh Circuits have addressed method-of-execution claims regarding compounded pentobarbital at the motion to dismiss stage and found the complaints insufficient.[22]   In *Zink*, 783 F.3d at 1100, the plaintiffs alleged that "the use of compounding pharmacies 'often results in drugs which are contaminated, sub-potent or super-potent, or which do not have the strength, quality or purity' of FDA-regulated drugs." The plaintiffs identified four specific risks that created: (1) sub- or super-potency that either left the prisoner alive but seriously injured or suffocated him to death before he was rendered unconscious; (2) allergic reactions from contamination; (3) pulmonary embolisms from foreign particles; and (4) burning from the drug's improper pH. *Id.* at 1099–1100. The Eighth Circuit held those allegations were too speculative to survive a motion to dismiss, because they were "descriptions of hypothetical situations in which a potential flaw in the production of the pentobarbital or in the lethal-injection protocol could cause pain." *Id.* at 1101.

Whitaker and Williams pleaded a related claim that the single test of the execution drugs conducted before delivery to TDCJ presents a substantial risk

---

[21] *Wood*, 836 F.3d at 540 ("However one kneads the protean language of equal protection jurisprudence, the inescapable reality is that these prisoners have not demonstrated that a failure to retest brings the risk of unnecessary pain forbidden by the Eighth Amendment.").

[22] *See Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. 2015) (en banc) (per curiam); *Gissendaner*, 779 F.3d at 1278–79, 1283.

of serious harm because "this lack of information and testing makes it impossible to determine to what extent the compounded pentobarbital has degraded and what the risks to the inmate might be." If pleading hypothetical risks was insufficient to state a claim in *Zink*, *id.* at 1101, and *Gissendaner*, 779 F.3d at 1283, and we do not see a reason to split with our sister circuits' holdings, then the claim that additional testing is required to identify an otherwise unknown risk is surely insufficient. By the first element's own terms, the plaintiffs must make factual allegations as to the substantial risk of the severe pain instead of pleading ignorance. *Glossip*, 135 S. Ct. at 2737.

Whitaker's and Williams's claim that using compounded pentobarbital after its BUD risks severe pain also does not include sufficient factual assertions to survive a motion to dismiss. They claim that the BUD assigned to the drug by TDCJ "is not supported by the relevant provisions of the [United States Pharmacopeia], and in fact, extends far beyond the recommended BUD." This, allegedly, "raises grave concerns about potency, sterility, and stability of the pentobarbital, and thus of the risk of severe pain to the inmate." Again, this is the type of "speculation that the current protocol carries a substantial risk of severe pain" that is insufficient even at the motion-to-dismiss stage.[23]

2.

The plaintiffs have failed to plead an alternative method of execution as required by *Glossip*, 135 S. Ct. at 2737. The "'naked assertion' that other methods would be constitutional, devoid of further factual enhancement, fails to state a claim under the Eighth Amendment." *Zink*, 783 F.3d at 1103. The complaint includes no factual contentions that these alternatives "significantly

---

[23] *Zink*, 783 F.3d at 1101. The *Zink* plaintiffs alleged, *inter alia*, that the compounded pentobarbital was "use[d] beyond its expiration date . . . exacerbat[ing] the potential for [the aforementioned] harms." *Id.* at 1100.

No. 16-20364

reduce a substantial risk of severe pain." *Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 52). The plaintiffs merely advance the notion that there are FDA-approved barbiturates that could be administered with appropriate safeguards. The allegation that there are available drugs that could be handled properly is little more than a concession that there are constitutional ways for TDCJ to carry out executions.

3.

The plaintiffs assert in Count Three that TDCJ has "insufficient safeguards in the current execution protocol to protect them from the risk of cruel and unusual punishment at the time of their execution." This count also fails to state a claim.

Once again, there are no factual assertions that would allow the court reasonably to infer that the lack of these safeguards creates a "substantial risk of serious harm." *Id.* (quoting *Baze*, 553 U.S. at 50). The pleading merely lists the alleged deficiencies and states that they are necessary to avoid "the risk of cruel and unusual punishment" because without them "TDCJ cannot determine whether an inmate is subjected to severe pain at the time of his execution." The allegation that the risk of pain is indeterminate fails the requirements of a method-of-execution claim on its face. Even if the pleading had added the qualifier "substantial" to the risk alleged, this would still be a legal conclusion that *Iqbal*, 556 U.S. at 678–79, directs us to disregard.

C.

Counts One and Four deal with the plaintiffs' alleged inability to access information about their method of execution. Count One addresses the lack of a notification requirement in TDCJ's execution protocol itself, and Count Four speaks to TDCJ's failure to disclose, or concealment of, information about the

13

method of execution.  The plaintiffs aver that these are violations of the Eighth and Fourteenth Amendments.

The failure to disclose information or include a notice requirement in the protocol does not offend the Eighth Amendment.  "Perhaps the state's secrecy masks 'a substantial risk of serious harm,' but it does not create one."[24]  "[W]e know of no case, in the context of executions, in which the Supreme Court has found a liberty interest to exist, based on the contours of the Eighth Amendment, that goes beyond what that Amendment itself protects."  *Whitaker*, 732 F.3d at 467.

We rejected the plaintiffs' Fourteenth Amendment due process claim in *Sepulvado*, 729 F.3d at 419.  Disclosing information about the execution protocol "so [they] can challenge its conformity with the Eighth Amendment—does not substitute for the identification of a cognizable liberty interest."  *Id.*  The lack of a cognizable liberty interest is fatal to the due process claim.  *Id.* at 420.

The plaintiffs contend that we do not have to follow *Sepulvado* because it "was decided before many of the applicable developments in Texas, in this case, in the lethal injection landscape nationally, and before the Supreme Court's decision in *Glossip*."  But these changes are insufficient to justify departure from *Sepulvado*.  *See Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008).  Of those reasons, only *Glossip* would be an exception to the rule of orderliness, and it did not address due process questions regarding execution protocols.  *See Glossip,* 135 S. Ct. at 2731.  Without a cognizable liberty interest, the due process claims cannot survive a motion to dismiss.

Finally, the plaintiffs allege, in Counts One and Four, that this lack of

---

[24] *Sepulvado v. Jindal*, 729 F.3d 413, 420 (5th Cir. 2013) (footnote omitted) (quoting *Baze*, 553 U.S. at 52).

information interferes with their First Amendment right of access to the courts.[25] This claim fails on the pleadings. "One is not entitled to access to the courts merely to argue that there might be some remote possibility of some constitutional violation." *Whitaker*, 732 F.3d at 467. "Plaintiffs must plead sufficient facts to state a cognizable legal claim." *Id.* Because the plaintiffs have not met the pleadings standards for any of their claims, their access-to-the-courts theory necessarily fails as well.[26]

## D.

Count Two alleges the right to counsel "during the events leading up to and during the execution" under the First, Sixth, and Eighth Amendments.[27] These claims are without merit. The Sixth Amendment right to counsel only "extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The plaintiffs also have not satisfied the pleading requirements of a method-of-execution claim because they have not identified a "substantial risk of serious harm" from the lack of access. *See Glossip*, 135 S. Ct. at 2737 (quotation marks and citations omitted). The plaintiffs point to the possibility of "botched executions" that access to counsel could address, but that is just the kind of "isolated mishap" that is not cognizable via a method-of-execution claim. *See Baze*, 553 U.S. at 50. Finally, because the

---

[25] "[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 741 (1983).

[26] The Eighth Circuit has more broadly held that these claims do not extend to the absence-of-notice provisions in execution protocols. *Zink*, 783 F.3d at 1108 ("The prisoners do not assert that they are physically unable to file an Eighth Amendment claim, only that they are unable to obtain the information needed to discover a potential Eighth Amendment violation." (quoting *Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011))).

[27] Texas's execution protocol does permit a prisoner to meet with his attorney on the day of the execution with the permission of the warden.

No. 16-20364

plaintiffs have not succeeded in pleading an underlying claim, their access-to-the-courts assertion fails as well. *Whitaker*, 732 F.3d at 467.

IV.

The plaintiffs raise two procedural objections to the dismissal of their complaint. First, they claim that the district court incorrectly applied the summary-judgment standard to a motion to dismiss. They assert both that the court considered evidence outside the pleadings and that it applied a heightened pleading standard to its review of the complaint.

The district court did not apply a heightened pleading standard. Although it used language such as "established" and "demonstrate," *Whitaker*, 2016 WL 3199532, at *3–4, this is a function of the strict substantive requirements of a method-of-execution claim. As we have repeatedly mentioned, there must be sufficient facts in the complaint for the court reasonably to infer a "substantial risk of serious harm." *See Glossip*, 135 S. Ct. at 2737.

The district court did consider evidence outside the pleadings. It cited to stipulations Texas made to do additional testing on the compounded pentobarbital before the plaintiffs' executions and their concession that that would be satisfactory. *See Whitaker*, 2016 WL 3199532, at *3. But we have already held that such an error is harmless. *See Wood*, 836 F.3d at 542. "Accepting the facts as pled, all claims still fail." *Id.*

The plaintiffs also assert that the court abused its discretion in handling their discovery requests by establishing a confusing process, "predetermin[ing] what issues it thought were relevant" and being overly protective of information it was concerned would leak to the public. Discovery is "inapplicable"

16

where "[t]he district court ruled on [TDCJ's] motion to dismiss."[28] Any discovery error was harmless, because the plaintiffs were not entitled to discovery without a properly pleaded complaint. *See Twombly*, 550 U.S. at 559.

The judgment of dismissal is AFFIRMED.

---

[28] *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016); *see also Crenshaw v. United States ex rel. NASA*, No. 97-40487, 137 F.3d 1352 (table), 1998 WL 92559, at *1 (5th Cir. Feb. 12, 1998) (per curiam) (unpublished).

No. 16-20364

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

Because I would vacate the district court's order of dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and remand, I respectfully dissent.

In September of 2013, the Texas Department of Criminal Justice's (TDCJ) supply of Nembutal, the brand name of pentobarbital, prescribed by the current execution protocol expired. There was information that TDCJ had obtained a supply of propofol, midazolam and hydromorphone, but there was a lack of information about which drugs TDCJ planned to use in upcoming executions.

As a result, death-row inmates Thomas Whitaker, Perry Williams and Michael Yowell filed a complaint under 42 U.S.C. § 1983 on October 1, 2013, asserting violations of their rights to due process, access to courts, and right to be free from cruel and unusual punishment against various representatives of the TDCJ. Based upon new information that Yowell's imminent execution would be carried out with newly-purchased compounded pentobarbital, the plaintiffs sought a temporary injunction. The district court denied relief and this court affirmed. See *Whitaker v. Livingston* (*Whitaker I*), 732 F.3d 465 (5th Cir. 2013). Yowell was executed and dismissed from the case.

Whitaker and Williams (hereinafter collectively referred to as "Whitaker") then amended their complaint. The State filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), which the district court granted on the basis of lack of subject matter jurisdiction. Whitaker appealed. This court vacated the order of dismissal, concluding that "the district court clearly erred" in dismissing the claims on the basis that they were not yet ripe, and remanded "so that Whitaker is able to fully develop the claims based on the existing

18

protocol for an appropriate trial on the merits." *Whitaker v. Livingston* (*Whitaker II*), 597 F. App'x 771, 774 (5th Cir. 2015).

The matter has proceeded since then with various motions, orders, an order setting execution of Williams that was later withdrawn, and limited discovery. Of particular relevance, on September 11, 2015, Whitaker filed a second amended complaint. Three days later, the state filed a motion to dismiss for failure to state a claim under Rule 12(b)(6). On June 6, 2016, the district court granted the dismissal without allowing full development of the claims, any discovery on the second amended complaint, and/or an appropriate trial on the merits.[1]

Whitaker's second amended complaint claimed that:

> (1) The absence of any requirement that Defendants notify Plaintiffs of any changes in the lethal substance to be used to carry out executions, or changes to their legal injection protocol, deprives Plaintiffs of their ability to protect their right to not be subject to

---

[1] The majority states that the district court permitted limited discovery while the motion to dismiss was pending. However, the record reflects that the district court did not allow any discovery on the second amended complaint or after its filing while the motion to dismiss was pending.

Prior to the filing of the second amended complaint and the motion to dismiss, the district court had permitted only limited discovery. For example, when Williams' execution date was set, the district court called the case to trial with two weeks' notice and then put restrictions on the examination of witnesses.

Another example is when the district court ordered Texas to provide Whitaker with the purchase and compounding date for the compounded pentobarbital it has used in executions and any autopsy reports conducted of the execution, and to provide the court with the master formulation record and the certificate of analysis for in camera inspection, all by September 11, 2015. Texas filed an advisory on September 11, 2015, saying that it provided the purchase and creation dates, but could not provide any of the other items ordered.

In its order of dismissal, the district court also acknowledged discovery it had denied, saying: "The plaintiffs want more discovery. Among other things, they want to know what equipment was used to test the lethal-injection drugs and how and from whom Texas acquired the drugs." Then, "Texas has told the plaintiffs what they will kill them with and how they will do it. There is no denial of access just because they do not get what they want." But yet the district court then faulted the plaintiffs for not being able to articulate a challenge to the testing – when the court had denied their discovery on that very issue.

cruel and unusual punishment, and violates their right to due process, notice, an opportunity to be heard, and access to the courts in violation of the Eighth and Fourteenth Amendments to the United States Constitution;

(2) The absence of provisions that provide Plaintiffs access to counsel during the events leading up to and during the course of their execution deprives plaintiffs of their right of access to counsel and the courts in violation of their rights under the First, Sixth and Eighth Amendments and pursuant to 18 U.S.C. §3599;

(3) Plaintiffs' right to not be subject to cruel and unusual punishment, and their right to due process under the Eighth and Fourteenth Amendments are violated by: (1) Defendants' failure to conduct sufficient testing of the compounded pentobarbital prior to injection; (2) Defendants' use of a "use by" date for the compounded pentobarbital that extends far beyond accepted scientific guidelines; (3) Defendants' carrying out of executions under the current Execution Protocol, which lacks appropriate safeguards to limit the risk that Plaintiffs will suffer severe pain at the time of their executions;

(4) Plaintiffs' right to not be subject to cruel and unusual punishment, and their right to due process under the Eighth and Fourteenth Amendments, notice, opportunity to be heard, and access to courts are violated by: (1) Defendants' failure to disclose information regarding the lethal substance or substances TDCJ intends to use to carry out Texas executions; (2) Defendants' concealment of information about how the executions will be carried out.

The district court dismissed the claims on the basis that (a) the first, second, and part of the third claims are barred by limitations; (b) Whitaker did not adequately plead the complaint; and (c) all four claims are unsubstantiated by reliable, articulable, and demonstrable facts that establish claims upon which they seek relief. Whitaker subsequently filed this appeal.

**I. Whether the district court applied a standard which was clearly erroneous when assessing the Rule 12(b)(6) motion to dismiss.**

As the majority concedes, the district court improperly considered evidence outside the pleadings without converting the motion to dismiss into a

motion for summary judgment. Thus, the district court applied a standard which was clearly erroneous and there is no authority for the application of a harmless error standard. But, even if there was such authority, the error was not harmless because Whitaker's complaint was not deficient, as discussed herein.

This court reviews de novo the district court's grant of a motion for dismissal under 12(b)(6), applying the same standard used by the district court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion to dismiss, the court is limited to considering the contents of the pleadings. *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). Considering evidence outside the pleadings without converting the motion to dismiss into a motion for summary judgment is error. *Id. See also* Fed. R. Civ. P. 12(d) (If matters outside the pleadings are considered, the motion must be treated as one for summary judgment and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.") Thus, the district court erred.

The majority cites *Wood v. Collier (Wood I)*, 836 F.3d 534 (5th Cir. 2016) for the conclusion that this error is harmless. However, there is no authority for the application of a harmless error standard to a Rule 12(b)(6) dismissal. More importantly, *Wood I* cites no such authority. Further, it is troubling that this court is relying on a subsequent case decided by the same district court which denied prisoners relief that the State agreed to provide here. In *Wood*

21

No. 16-20364

*I,* the prisoners were seeking re-testing of the compounded pentobarbital prior to execution – something the State stipulated to here prior to the filing of Whitaker's second amended complaint and part of the evidence improperly considered by the same district court here in deciding the motion to dismiss. Also, the *Wood I* plaintiffs were seeking a stay and did not challenge the time barred holding.

Accordingly, the district court clearly erred and this issue alone is sufficient to warrant reversal.

## II. Whether appellants' claims are time-barred; and

## III. Whether the district court abused its discretion by violating this court's mandate and by not allowing meaningful discovery.[2]

The claims are not time-barred because the cause of action did not accrue until the state began using compounded pentobarbital under the revised protocol in 2013. Additionally, Whitaker is arguably subject to a continuing injury based on TDCJ's ability to change its protocol at any given time. *See* Tex. Code Crim. Proc. Art. 43.14.

We review de novo a district court's dismissal of a § 1983 action as time-barred. *See Price v. City of San Antonio, Tex.*, 431 F.3d 890, 892 (5th Cir. 2005). Federal courts look to federal law to ascertain when a § 1983 action accrues and the limitations period begins to run, but "state law supplies the applicable limitations period and tolling provisions." *Harris v. Hegmann*, 198 F.3d 153, 156-57 (5th Cir. 1999).

As this court has said previously, "in the event a state changes its execution protocol after a death-row inmate's conviction has become final, the limitations period will necessarily accrue on the date that protocol change

---

[2] These issues are combined for discussion.

No. 16-20364

becomes effective." *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008)  This is consistent with other circuits.  *Id.* at 415.

Further, the statute of limitations is an affirmative defense.  This case was dismissed under Rule 12(b)(6).  Additionally, as Judge Dennis said in his separate opinion, concurring in part and in judgment, in *Wood v. Collier (Wood II)*, No. 16-20556, --- F.App'x ----, 2017 WL 892490 (5th Cir. Mar. 6, 2017):

> I recognize that *Walker v. Epps*, 550 F.3d 407 (5th Cir. 2008), is binding authority in this Circuit and requires plaintiffs seeking solely equitable relief to comply with state statutes of limitations. However, I am concerned that our decision in *Walker* misinterpreted the Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), when it read it to overrule *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), a case that Wilson neither discussed nor even mentioned. As a member of this court has observed, "[t]he question whether a statute of limitations should apply to a claim such as this one, where the plaintiff seeks purely injunctive relief against an injury that, although certainly foreseeable, has not yet occurred, is a difficult one." *Walker v. Epps*, 287 Fed. App'x 371, 379 (5th Cir. 2008) (King, J., dissenting). As she did, I refer the reader to Judge Myron Thompson's excellent discussion of this subject, published at *Jones v. Allen*, 483 F.Supp.2d 1142 (M.D. Ala. 2007).

*Id.* at *2.  I agree.

Under our existing authority, any change sets the accrual.  This court has already assumed the 2013 change in pentobarbital was the appropriate accrual date in *Wood II*.  *Id* at *1.  The majority explicitly adopts *Wood II's* conclusions as published precedent.  Thus, the 2013 change would be the appropriate accrual date here.

Further, even under the non-binding, persuasive authority of *Gissendaner v. Commissioner, Georgia Dept. of Corrections*, 779 F.3d 1275, 1280-81 (11th Cir. 2015), the particular part of the protocol that changed – the

use of compounded pentobarbital – was substantial. Also, the Eighth Circuit treated it as such in the non-binding, persuasive case of *Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. 2015), which the majority here relies on heavily for other reasons.

Compounded pentobarbital is made in a different manner and the change affects everything from the beyond-use date (BUD) to the availability of data regarding its effects.[3]  Additionally, Whitaker's other claims, such as access to counsel, are greatly affected by the change in protocol.  The district court essentially dismissed this claim because Texas previously complied with the Sixth Amendment right to counsel at trial and there's no basis to suggest it extends to the day of execution.    However, such a finding ignores the issue of whether the State can deprive Whitaker of the right to preserve other constitutional rights, such as those at issue here, by denying the presence of counsel at the critical stage of execution.  Moreover, Whitaker raised the claims regarding the absence of protocols that should be in place in his amended complaint.  *Whitaker II* was decided after that.  Thus, this issue was clearly not waived.

This court has previously said:

> Under law-of-the-case doctrine, "the district court on remand, or the appellate court on a subsequent appeal, abstains from reexamining an issue of fact or law that has already been decided on appeal." *United States v. Teel*, 691 F.3d 578, 582 (5th Cir.2012). A corollary of the law-of-the-case doctrine is the mandate rule, which "requires a district court on remand to effect [the court's] mandate and to do nothing else." *Gen Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir.2004) (citation and internal quotation marks omitted). "A district court on remand 'must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of

---

[3] I note that the majority assumes Whitaker's claims regarding retesting, the BUD and concealment of information are not time-barred.

that court.' " *United States v. McCrimmon*, 443 F.3d 454, 459 (5th Cir.2006) (*quoting United States v. Matthews*, 312 F.3d 652, 657 (5th Cir.2002)). "Whether the law of the case doctrine foreclose[s] the district court's exercise of discretion on remand and the interpretation of the scope of this court's remand order present questions of law that this court reviews de novo." *United States v. Hamilton*, 440 F.3d 693, 697 (5th Cir.2006) (citation and internal quotation marks omitted).

*Perez v. Stephens*, 784 F.3d 276, 280 (5th Cir. 2015).

This court already remanded "so that Whitaker is able to fully develop the claims based on the existing protocol for an appropriate trial on the merits." The majority concedes that the "district court was bound to apply the holding in *Whitaker* [*II*]." That did not happen. Rather than implement the letter and spirit of this court's mandate, the district court disregarded explicit directives of this court, did not allow Whitaker meaningful discovery or an opportunity to fully develop the claims, and later dismissed under Rule 12(b)(6) while considering matters outside the pleadings without converting the motion to dismiss to a motion for summary judgment.

For these reasons, I would conclude that the district court clearly erred and abused its discretion.

**IV. Whether appellants' second amended complaint states claims upon which relief may be granted.**

Clearly the claims raised by Whitaker exist. *Glossip v. Gross*, 135 S.Ct. 2726 (2015). As stated previously herein, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. We must accept all well-pleaded facts as true, viewing them in the light most favorable to Whitaker. *Id.* While "factual

25

allegations must be enough to raise a right to relief above a speculative level," the complaint "does not need detailed factual allegations."

The majority cites *Glossip* for the standard of a method-of-execution claim. *Glossip*, 135 S.Ct. at 2737. But the portion cited by the majority sets out what is required for a petitioner to establish a likelihood of success on the merits for purposes of a stay of execution. Although the elements of a method of execution claim – as pleaded by Whitaker here – are relevant, the heightened standard of *Glossip* is not applicable because Whitaker must only plausibly allege his claims to survive a 12(b)(6) dismissal rather than establish a likelihood of success on the merits. Further, *Baze v. Rees*, 553 U.S. 35 (2008), did not involve a Rule 12(b)(6) dismissal, but rather the court upheld Kentucky's three-drug lethal injection protocol after a 7-day bench trial. Moreover, *Fears v. Morgan (In re Ohio Execution Protocol)*, No. 17-3076, --- F.3d ----, 2017 WL 2784503 (6th Cir. June 28, 2017), also involved a stay of execution under Ohio's three-drug lethal injection protocol, not a Rule 12(b)(b)(6) dismissal.

In *Zink*, which again is non-binding, the Eighth Circuit concluded that the plaintiffs' specific allegations regarding compounded pentobarbital were too speculative because their own experts "underscore[d] that the harms they have identified are hypothetical." *Id.* 783 F.3d at 1101. *Zink* relied in part on *Whitaker I* and its heightened standard on a motion for preliminary injunction to reach its conclusion. *Id.* at 1102. *Zink* also pointed to an Eleventh Circuit case, *Wellons v. Comm'r Ga. Dep't of Corr.*, 754 F.3d 1260, 1265 (11th Cir. 2014), involving the same heightened standard. *Id.* More importantly, *Zink, Whitaker I*, and *Wellons* were all decided before the Supreme Court decided *Glossip*.

No. 16-20364

The thread throughout the district court opinion is the circular logic of Whitaker's inability to prove his claims until after his rights are violated, despite the fact that once that happens, Whitaker would be deceased and unable to prove anything – particularly if he is denied counsel at execution. However, this logic ignores the fact that Whitaker is not required to prove the claims in his complaint to survive a motion to dismiss.

The district court said, "compounded pentobarbital has successfully killed the condemned in Texas." The relevant factor is not whether a condemned man eventually dies. The district court also found that Whitaker offered no data showing that errors in testing exist, how the integrity of the test is compromised, or that the drug is likely to be defective if it is mis-tested. However, the district court denied discovery on the testing, as discussed above herein.

The district court then improperly relied upon stipulations and evidence outside the pleadings. Further, the district court dismissed Whitaker's assertions that were derived from therapeutic use of old pentobarbital rather than compounded pentobarbital. However, contradictorily, both the district court and the majority conclude that there's no difference between pentobarbital and compounded pentobarbital, in which case the data should have been relied upon. Additionally, the Supreme Court has found that "extrapolations and assumptions" from data on therapeutic doses of drugs used for execution are entirely reasonable. *See Glossip*, 135 S.Ct. at 2741. This would necessarily extend to extrapolations regarding the BUD.

Based on all of this, I would conclude that Whitaker has pleaded enough facts to state a plausible claim and should be given the opportunity to conduct meaningful discovery.

No. 16-20364

Accordingly, for the reasons set out herein, I would vacate the district court's order of dismissal and remand.  Therefore, I respectfully dissent.